**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL HARKIN,** | : | **Civil No. 1:12-CV-925** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MICHAEL ASTRUE,** | : | |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM   OPINION

### I.    Statement of Facts and of the Case

The plaintiff appeals from an adverse decision denying his claim for disability insurance benefits.  This application was denied after a September 1, 2010, hearing before  an Administrative Law Judge (ALJ), (Tr. 34-68.),  in a written decision dated October 21, 2010.  (Tr. 7-19.)  The record of these social security proceedings reveals that Harkin applied for disability insurance benefits (DIB), on April 1, 2009, alleging

that he became disabled when the plaintiff was assaulted and struck by a bottle, an injury which caused the loss of the vision in his left eye. (Tr. 114.)[1]

At the time of this accident, Harkin was a younger individual, approximately 42 years old. (Tr. 94.) Harkin had a sporadic employment history as a laborer and truck driver spanning the two decades preceding this injury, and had no reported income during many of the years immediately preceding this assault. (Tr.103, 114.)

The evidence presented to the Administrative Law Judge in this case presented a mixed and highly equivocal picture regarding the extent to which Harkin's left eye vision impairments were disabling. According to Harkin, he had been blind in his left eye since he was attacked and hit in the face on March 20, 2009. (Tr. 226.) Following this attack, Harkin was hospitalized for two days, from March 21 to March 23 of 2009. (Tr. 176.) On March 21, 2009, Harkin underwent surgical repair of the ruptured globe of his left eye, removal of an intraocular foreign body from his left eye, and suturing of superficial facial lacerations. (Tr. 159.)

In the immediate wake of this injury, Harkin's treating ophthalmologist, Dr. Rachel Peck , completed a Pennsylvania Department of Public Welfare Employability

---

[1]Harkin's April 2009 application alleged an onset date of February 1, 2006, for this vision related disability, (Tr. 114.), although other records indicated that Harkin suffered this eye injury at a much later date, March of 2009. (Tr. 226.) For purposes of this appeal, we need not resolve this three year discrepancy in the date of onset of this disability.

Assessment form on April 14, 2009, in which she found that Harkin was only disabled for a limited six month period of time from March through September 2009, due to his eye injury. (Tr. 464.) Dr. Peck's findings of only a temporary disability for Harkin were then echoed on August 3, 2009, when Govind Kachhadiya, M.D., Harkin's primary care physician at Wilkes Academic Medicine, informed Harkin that his left eye blindness was not a permanent disability unless it was found to be disabling by his treating ophthalmologist. (Tr. 269.) As Dr. Kachhadiya explained to Harkin: "Discussed that disability with one eye blindness is not permanent unless stated by ophthalmologist and severe vision issue. At this point gave 3 months disability for follow up and will decide in the near future–possible I can not extend it after this period. Patient seems understanding . . . ." (Id.)

While Harkin's primary care physician concluded by August 2009 "that disability with one eye blindness is not permanent unless stated by ophthalmologist and severe vision issue," (Tr. 269.), Harkin's disability claim received very little subsequent support from his treating ophthalmologists. Thus, in September 2009, Harkin's treating ophthalmologist, Dr. Gregory Notz, simply assessed Harkin as temporarily disabled, noting in response to a question regarding whether Harkin might be a candidate for Social Security disability or SSI benefits, "not yet." (Tr. 405.) Dr. Notz repeated this equivocal judgment in February 2010 when he

completed another Pennsylvania Department of Public Welfare Employability Assessment form, in which he opined that Harkin was temporarily disabled from March 21, 2009, until March 21, 2010. (Tr. 420.) In response to whether Harkin might be a candidate for Social Security Disability or SSI benefits, Dr. Notz wrote, "N/A [not applicable]." (Tr. 420.)

Dr. Notz expanded on these views, suggesting that Harkin was not totally disabled, in a March 16, 2010, letter to plaintiff's counsel. (Tr. 414-15.) In this correspondence Dr. Notz stated: "With respect to [Mr. Harkin's] work status, since I do not know what kind of work he does, I really cannot answer this for you. He needs to avoid work that involves depth perception, heavy equipment and machinery, CDL license or doing anything that required the use of a microscope is not possible. *Otherwise, I do not see any specific medical contraindication to his returning to work*." (Tr. 415.)(emphasis added).[2]

It is against the backdrop of this profoundly mixed and equivocal medical record that the ALJ conducted a hearing into Harkin's disability claim on September 1, 2010. (Tr. 32-66.) Harkin testified at this hearing, describing a level of personal

---

[2]Indeed, the only doctor to provide consistent, unqualified findings of temporary disability was Harkin's gastroenterologist. (Tr. 465-68.) Given the fact that this physician did not treat Harkin's vision problems, his views were understandably accorded little weight in the ALJ's analysis of this case.

activity that, in some respects, was not wholly consistent with a claim of complete disability. Thus, Harkin indicated that he did not require assistance with activities of daily living (Tr. 47-48.), but encountered some difficulties with activities requiring depth perception and peripheral vision. (Tr. 51-52.) Mr. Harkin also explained that some of the limitations on his daily activities were not related to his vision impairments. For example, Harkin testified that while he no longer had a driver's license, this was due to a DUI conviction, and not to problems with his vision. (Tr. 45-46.)

The ALJ also developed information from a vocational expert witness regarding employment prospects for Harkin given his visual limitations. At this hearing the ALJ asked the vocational expert to assume a hypothetical individual with Harkin's vocational characteristics who had no exertional limitations but was limited to work performed in a stable environment not subject to more than occasional changes; no exposure to moving/large equipment or machinery, loading docks, unprotected heights, or high degrees of ambient noise; no work that was dependent upon fine visual discrimination or depth perception; and no work dependent upon frequent reading of written materials as a mode of communication or typing on a computer. (Tr. 61-62.) In response to this hypothetical question the vocational expert

testified that the individual described by the ALJ would be capable of performing thousands of jobs in the Pennsylvania economy. (Tr. 63.)

On October 21, 2010, the ALJ issued an opinion in this case denying Harkin's application for benefits. (Tr. 7-20.) In this opinion, the ALJ carefully summarized the medical opinion evidence, noting that neither Harkin's primary care physician nor Harkin's treating ophthalmologists had found him to be totally disabled. Rather these physicians concluded that Harkin had the residual capacity to perform some work. (Id.) In light of these medical opinions, the ALJ concluded that Harkin's claims of complete disability were not fully credible. (Id.) Instead, relying upon the medically determined limitations identified by treating doctors, and the opinion testimony of the vocational expert, the ALJ determined that there were thousands of jobs in the regional economy which Harkin could fill. (Id.) Having reached these conclusions, the ALJ found that Harkin was not disabled and denied his disability claim. (Id.)

After exhausting his administrative appeals, Harkin filed this appeal. (Doc. 1) The parties have fully briefed this case, (Docs. 11 and 12), and, therefore, this case is ripe for resolution. For the reasons set forth below the decision of the ALJ will be affirmed.

## II.    Discussion

### A.    Standards of Review–The Roles of the Administrative Law Judge and This Court

#### 1.    Initial Burdens of Proof , Persuasion and Articulation for the ALJ

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the administrative law judge (ALJ) and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), "work which

exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits. <u>See</u> 20 C.F.R. § 404.1520. <u>See also</u> <u>Plummer v. Apfel</u>, 186 F.3d 422, 428 (3d Cir. 1999). If the ALJ finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. <u>See</u> 20 C.F.R. § 404.1520. As part of this analysis the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. <u>See</u> 20 C.F.R. § 404.1520.

This disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that she is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's

abilities, age, education, and work experience can perform.  Mason v. Shalala, 994

F.2d 1058, 1064 (3d Cir. 1993).

The ALJ's disability determination must also meet certain basic procedural and

substantive requisites.   Most significant among these legal benchmarks is a

requirement that the ALJ adequately explain the legal and factual basis for this

disability determination.  Thus, in order to facilitate review of the decision under the

substantial evidence standard, the ALJ's decision must be accompanied by "a clear

and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d

700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must

indicate which evidence was accepted, which evidence was rejected, and the reasons

for rejecting certain evidence. Id. at 706-707.  In addition, "[t]he ALJ must indicate

in his decision which evidence he has rejected and which he is relying on as the basis

for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### 2.    Guidelines for Assessment of the Disabling Effect of a Claimant's Subjective Complaints

Moreover, where a disability determination turns on an assessment of a

claimant's subjective medical complaints, the Social Security Regulations provide a

framework under which a claimant's subjective complaints are to be considered.  20

C.F.R. § 404.1529.   Such cases require the ALJ to "evaluate the intensity and

persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). Cases involving an assessment of subjective reports of pain "obviously require[ ]" the ALJ "to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Id.

In making this assessment, the ALJ is guided both by statute and by regulations. This guidance eschews wholly subjective assessments of a claimant's pain. Instead, at the outset, by statute the ALJ is admonished that an "individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the evidence. . . , would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A).

Applying this statutory guidance, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. Under these regulations, first, symptoms, such as pain, shortness

of breath, and fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529(b). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. § 404.1529(b). Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding her symptoms: "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. SSR 96-4p provides that "Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the

pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)." SSR 96-4p.

### 3. Legal Benchmarks for Assessing Treating Physician Opinions

Further, it is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). This principle applies with particular force to the testimony of a treating physician, testimony that is to be accorded great weight by the ALJ. In this regard, the legal standards governing our evaluation of this type of evidence are familiar ones. In Morales v. Apfel, 225 F.3d 310 (3d Cir. 2000), the Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a physician stating that:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer [v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)] (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987)); see also Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir.1994); Jones, 954 F.2d at 128; Allen v. Bowen, 881 F.2d 37, 40-41 (3d Cir.1989); Frankenfield v. Bowen, 861

F.2d 405, 408 (3d Cir.1988); <u>Brewster</u>, 786 F.2d at 585.  Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." <u>Plummer</u>, 186 F.3d at 429 (citing <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir.1993)).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled.  See <u>Adorno</u>, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.  <u>Plummer</u>, 186 F.3d at 429; <u>Frankenfield v.  Bowen</u>, 861 F.2d 405, 408 (3d Cir.1988); <u>Kent</u>, 710 F.2d at 115.

<u>Id.</u> at 317-318.

Furthermore, when assessing competing views of treating and non-treating physicians, the ALJ and this Court are cautioned that:

[A]n ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence.  <u>Ferguson</u>, 765 F.2d at 37 (1985).  When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason."  <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir.1993).  The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. <u>See</u> <u>Stewart v. Secretary of H.E.W.,</u> 714 F.2d 287, 290 (3d Cir.1983).  Treating physicians' reports should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." <u>Rocco v. Heckler</u>, 826 F.2d 1348, 1350 (3d Cir.1987); 20 C.F.R. § 404.1527(d)(2) (providing for controlling weight where treating physician opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record.)  An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical

evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. <u>Newhouse v. Heckler</u>, 753 F.2d 283, 286 (3d Cir.1985).

<u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir.1999).

Similarly, the Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight. 20 C.F.R. § 416.927(d)(2). When the opinion of a physician is not given controlling weight, the length of the treatment relationship and the frequency of examination must be considered. The Regulations state:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a non-treating source.

20 C.F.R. § 416.927(d)(2)(I).

Additionally, the nature and extent of the doctor-patient relationship is considered. The Regulations state:

> Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has

performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 416.927(d)(2)(ii).

### 4. Analysis of Visual Impairment Claims Arising Out of Loss of Vision in One Eye

Applying these principles to social security disability claims involving the loss of vision in one eye, courts have frequently sustained the denial of such claims in the past, finding that this loss of vision in one eye is not *per se* disabling. See e.g., Story v. Astrue, 294 F. App'x 883 (5th Cir. 2008); Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 745 (6th Cir. 2004); Banks v. Massanari, 258 F.3d 820, 822 (8th Cir. 2001); Cockerham v. Sullivan, 895 F.2d 492, 496 (8th Cir. 1990) citing Cummins v. Schweiker, 670 F.2d 81, 84 (7th Cir.1982) (court upholds ALJ's finding that blindness in one eye had not interfered with previous work); Bradley v. Sec'y of Health & Human Servs., 862 F.2d 1224, 1226 (6th Cir. 1988). But see, Cooper v. Comm'r of Soc. Sec., 268 F. App'x 152, 157 (3d Cir. 2008)(Claimant blind in one eye and losing vision in the remaining eye). Instead, the courts recognize that this loss

of visual acuity in one eye is simply a factor which must be taken into account when determining whether a disability claimant has the residual capacity to perform work in the national economy. Where the evidence shows that a claimant retains the ability to perform work in the national economy notwithstanding a visual impairment in one eye, a disability finding is unwarranted, and the decision of an ALJ denying benefits should be affirmed. Id. As one commentator has observed: "[E]ven if a claimant's visual impairment or impairments were to eliminate all jobs that involve very good vision, such as working with small objects or reading small print, there would still be a substantial number of jobs remaining across all exertional levels, according to SSA policy, as long as the claimant retains sufficient visual acuity to be able to handle and work with rather large objects and has the visual fields to avoid ordinary hazards in a workplace." 3 Soc. Sec. Law & Prac. § 43:46 (Dec. 2013 ed.) (collecting cases). However, because visual acuity plays an important role in some work settings, this Court has cautioned ALJs to fully develop a record in these cases, by obtaining vocational expert testimony regarding the claimant's ability to perform work despite these visual limitations. See Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000).

### 5. Judicial Review of ALJ Determinations–Standard of Review

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)." Johnson, 529 F.3d at 200. See also Pierce v. Underwood, 487 U.S. 552

(1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, No. 99-

715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981).

### B.     The ALJ's Decision Was Supported By Substantial Evidence

Judged against this deferential standard of review we find that the ALJ's disability decision in this case was supported by "substantial evidence" and, therefore, may not now be disturbed. Indeed, viewing this case first in terms of the medical evidence, it is clear that the greater weight of the evidence fully supported the ALJ's findings that Harkin was not disabled, and the ruling reflects a thorough, careful, balanced analysis of all of the proof. It is, therefore, the paradigm of a decision which draws carefully upon substantial evidence.

As to Harkin's claims of physical disability based upon the loss of vision in one eye, as we have noted, this decision involved an assessment of medical evidence where the greater weight of both the objective medical findings, and medical expert opinions, favored a finding that Harkin was not wholly disabled. Thus, the evidence showed that the plaintiff's subjective complaints of pain were in conflict, and were not supported by independent medical evidence. Since "there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic

techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged," 42 U.S.C. § 423(d)(5)(A), these medical results, which did not confirm the type of abnormalities which would sustain the plaintiff's reports of pain, constituted "substantial evidence" supporting the ALJ's finding.

Similarly, the ALJ's assessment of the medical evidence rested upon sufficient "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Johnson, 529 F.3d at 200, and, therefore, was supported by "substantial evidence." In this case, the ALJ correctly noted that the plaintiff's complaints were not consistently supported by medical treatment records. Given these conflicts, the ALJ as fact-finder was entitled to give greater weight in this regard to the objective medical evidence, which fully supported those medical opinions which found that Harkin could return to work. The ALJ also quite appropriately considered the medical opinion evidence of both Harkin's treating ophthalmologists and primary care physician, who consistently concluded that the plaintiff was not permanently disabled by this eye injury. Recognizing that the "substantial evidence" standard of review prescribed by statute is a deferential standard of review, Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004), which is met by less than a preponderance of the

evidence but more than a mere scintilla of proof, <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), we find that the ALJ's decisions assessing this medical proof regarding the plaintiff's's ability to function despite his various claimed impairments was supported by substantial evidence and may not now be disturbed on appeal.

Further, we note that the ALJ followed the appellate court's guidance in <u>Sykes v. Apfel</u>, 228 F.3d 259 (3d Cir. 2000), by developing vocational expert testimony regarding the degree to which Harkin's vision problems might limit his employment prospects. That testimony, however, fully supported the ALJ's finding since the vocational expert testified that, even with this limited eyesight, Harkin could fill thousands of positions in the regional economy.

In sum, the medical evidence strongly supported the ALJ finding in this case. Since the record in this matter shows that the claimant's complete medical history simply did not sustain a permanent disability finding, and the vocational expert testimony illustrated that jobs existed in the national economy that Harkin could fill, the plaintiff's complaints do not compel a remand of this matter.

### III.    <u>Order</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that the Commissioner's decision denying Harkin's application for disability benefits is upheld.

So ordered this 16th day of December, 2013.

**_S/Martin C. Carlson_**
Martin C. Carlson
United States Magistrate Judge